**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ANDREW VILLANO, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:09-cv-1334 (JCH) |
| | : | |
| v. | : | |
| | : | |
| DANIEL SACCO, ET AL., | : | APRIL 26, 2011 |
| Defendants. | : | |

**RULING RE: WEST HAVEN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**(DOC. NO. 40)**

## I.    INTRODUCTION

Plaintiff Andrew Villano alleges that, during the course of his arrest, he was

beaten by two police officers after he had complied with a police request that he lie face

down on the ground.  Villano alleges that police officers from various jurisdictions were

present at the scene, either participating in or standing by during his arrest.  Villano filed

a Complaint in state court against five individual police and the Cities of West Haven,

New Haven, and Orange.  Two of those defendants removed the action to this court.

This Ruling addresses a Motion for Summary Judgment filed by the City of West

Haven and the three individual defendants from the West Haven Police—Craig

Casman, Robert Fazzino, and Paul Sires—(collectively, the "West Haven Defendants").[1]

Four of the Counts in the Complaint are relevant to the West Haven Defendants.  In

Count Six, Villano brings a claim against the individual defendant officers pursuant to 42

U.S.C. §§ 1983 and 1988, for the use of unreasonable and excessive force during his

---

[1] This Ruling does not address claims against any of the other defendants.  The claims against
the City of Orange and Officer Reshotnik were withdrawn by Villano.  Doc. No. 19.  The City of New
Haven and Detective Sacco have not filed a dispositive motion.

arrest.  In Counts One and Two, Villano asserts common law tort claims against the individual defendant officers, for negligence and for assault and battery, respectively.  In Count Four, Villano asserts a claim for negligence against the City of West Haven.

Upon review of the parties' submissions, and following oral argument, the court concludes that there are genuine issues of material fact with respect to all of the claims, except for the claim for assault and battery against Officers Casman and Fazzino. Therefore, the West Haven Defendants' Motion for Summary Judgment (Doc. No. 40) is granted solely with respect to that claim against those two defendants, and it is denied in all other respects.

## II.    BACKGROUND

Andrew Villano and Glen Galasso were arrested at approximately 6 p.m. on August 14, 2007.  Earlier that day, Villano, Galasso, and two other friends had encountered the police in or around New Haven.  While the four friends were driving  in the area, they stopped at a gas station and purchased drugs.  Villano Depo. (Def. Ex. B) at 22-23.  Shortly thereafter, when their car was at a stoplight, a plainclothes officer approached and ordered that they get out of the car.  Villano Dep. at 23-24.  Villano testified that he did not realize that the man was a police officer.  Id.  Because they were in a "bad neighborhood," Villano decided not to get out of the car and drove off.  Id. at 24, 79-80.  Villano testified that, as he drove forward, the rear passenger window was punched, causing it to shatter.  Id. at 25, 79-80.  However, Villano admitted that he did not actually see the punch, because he was looking forward; his friend Galasso told him that the window was punched.  Id. at 25.  Villano did hear the window break and "thought some guy was trying to like break in or steal the car."  Villano Depo. at 79-80.

2

Officer Casman's Affidavit indicates that he was the police officer who approached the car, and that it was his arm that shattered the car's window. However, Officer Casman's account suggests that he was a passive victim:

> Because of the manner in which the plaintiff maneuvered his vehicle, my right arm went through the rear passenger side window of the plaintiff's car. The plaintiff . . . then swerved his vehicle to the left, and, as a result of this action, my right arm was deeply scratched, as the shards of glass from the already broken window scraped against my arm. The plaintiff sped off, and I was taken to the hospital. I needed 14 stitches as a result of this incident.

Casman Aff. ¶ 10. The police report states that Villano had "put the car in reverse and backed up towards Officer Casman, striking his right forearm," and that the author of the report "observed the rear passenger window shatter as the vehicle struck Officer Casman." Def. Ex. A at 4. Villano testified that he was driving forward at the time the window was smashed. Villano Depo. at 79-80.

Later that day, while Villano and Glasso were walking through a parking lot on Whitney Avenue in Hamden, when he saw an Explorer or similar vehicle speed into the parking lot. Villano Depo. at 34. Villano then saw three plainclothes police running towards them from another direction. Id. at 35. Villano indicated that these three officers were not coming from the Explorer, but from a car that had been parked somewhere in the direction of Whitney Avenue. Id. at 41-42, 99. Villano testified that he "thinks," but is "not 100 percent positive" that Detective Sacco—who is not one of the West Haven Defendants—was one of those three police officers. Id. at 40-41. However, Villano was certain only that Detective Sacco was "there, like, throughout the whole incident." Id. Villano also testified that one of the three officers had a bandage

on his arm and that another one of them had a shaved head.  Id. at 99-100.  He testified

that he "recognized the guy with the bandage on his arm."  Id. at 83.

Villano heard the officers shout, "Police; get on the ground."  Villano Depo. at 43.

As the officers approached, Villano heard an officer ask, "Which one was the driver?"

and another officer respond by identifying Villano.  Id.  Villano testified that it was the

officer with the bandaged arm who identified him.  Id. at 90.  Villano dropped to his

knees, and then, as the officers got closer, he lay flat on the ground.  Id. at 43.  One

officer then got on top of Villano, placed his knee in Villano's back, and twisted Villano's

arm behind his back.  Id. at 43, 45.  Another one grabbed Villano's head, said "stop

resisting," and began to slam Villano's head onto the paved parking lot surface.  Id. 43,

45-46.  The officers were yelling at Villano, calling him a "piece of shit" and a "drug

addict," and they said something about an officer getting hurt.  Id. at 43. Villano testified

that the police slammed his head into the ground six or seven times, very hard, and

said, "You're a piece of shit; you're lucky it's not dark out.  You're lucky there's people

around."  Id. at 46-47.

Because Villano was lying face down on the ground immediately before and

during the alleged attack, Villano did not have a good view of the officers who held him

down and beat his head.  Villano Depo. at 44, 93-94.  However, Villano believed that the

officer with the shaved or bald head was one of them.  Id. at 44, 96, 99.  At some point

thereafter, the officer with the bald or shaved head picked Villano up and turned him

over.  Id. at 96.  At that point, he saw Detective Sacco and a number of other officers—

perhaps 5 or 6 in total—standing around him.  Id. at 47, 51.  Villano saw the officer with

the bandaged arm "standing over by Glen [Galasso]."  Id. at 100.  They were

subsequently joined by additional officers.  Id. at 51.

The police report provides no indication of which officers apprehended Villano: "Members of the Task Force along with the West Haven Street Crime Unit and Hamden Police moved into subjects location.  The two subjects, identified as Andrew Villano and Glen Galasso DOB 4-4-1984.  During the apprehension, Villano was taken to the ground in a brief struggle and sustained a laceration to his head."  Def. Ex. A at 5.

The incident caused a laceration over Villano's right ear.  Villano Depo. at 59. The laceration was half an inch long, perhaps longer,  id. at 62, and it bled profusely, leaving a pool of blood on the parking lot surface, id. at 59.  Villano felt dizzy, but did not lose consciousness.  Id.  Fire department personnel placed gauze over the cut and transported Villano to the Yale-New Haven Hospital, where the cut was closed with four staples.  Id. at 58-59.  The wound subsequently became "infected a little bit."  Id. at 63. After the staples were removed, Villano was left with a scar and a lump on his head.  Id. at 61.  Villano also complains that the incident has left him with blurry vision, id. at 70, 90, due to a "macular pucker in his right eye," Complaint ¶ 12.  Although Villano also complains of nervousness, mental anguish, humiliation, and emotional distress, Complaint ¶¶ 12, 22-23, he admitted that he has not seen any mental health professional for emotional distress, Villano Depo. at 71.  Villano testified that his emotional distress manifests itself as nervousness around police officers.  Id. at 70.

In his Affidavit, Officer Casman claims that, just prior to the arrest, "DEA Agent Raymond Walczyk, Officer Fazzino and I were in the same unmarked vehicle."  Casman Aff. ¶ 14.  Officer Casman claims that they observed Villano and Galasso in the Whitney Avenue area just prior to the arrest, but then lost sight of the pair "as several buildings

blocked them from view." Id.  The officers then used the radio to inform other police officers in the area that Villano and Galasso were headed in their direction.  Id.  Officer Casman claims that he did not have a shaved or bald head at the time of the arrest, but that he did have a bandage on his forearm due to the earlier incident, in which his arm went through the car window.  Id. ¶ 11.  He also claims that he never touched Villano, and that he did not witness any assault on Villano.  Id. ¶ 14.

Officer Fazzino claims that he also observed Villano and Galasso in the Whitney Avenue area just prior to the arrest, that he lost sight of the pair, and that he radioed ahead to other officers in the area.  Fazzino Aff. ¶ 8.  Officer Fazzino claims that he did not have a bald or shaved head and that he did not have a bandaged forearm at the time of the arrest.  Id. ¶ 10.  He also claims that he arrived at the scene of the arrest after Villano was in custody, that he never touched Villano, and that he did not witness any assault on Villano.  Id. ¶¶ 9, 10.

### III.    LEGAL STANDARD

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).  Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record to address questions of fact, the trial court must resolve

all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## IV. DISCUSSION

### A. Count Six: Section 1983 Claim for Excessive Force Against Officers Casman and Fazzino

Count Six alleges that the individual police officers "subjected the Plaintiff to unreasonable and excessive force in violation of the fourteenth amendment of the United States Constitution and Title 42 United States Code, Section 1983 and 1988." Complaint ¶ 21. As the parties agree, this claim of unreasonable and excessive force during the course of an arrest should be measured under the reasonableness standard imposed by the Fourth Amendment.[2] See Graham v. Connor, 490 U.S 386, 395 (1989); see also Def. Mem. at 10; Pl. Opp. at 6. Under that standard, "the 'reasonableness'

---

[2] West Haven Defendants correctly state that the Sixth Count "is governed by the Fourth Amendment standard of reasonableness." Def. Mem. at 10. However, they claim that it somehow follows that they are "entitled to judgment as a matter of law with respect to the Plaintiff's Fourteenth Amendment claims." Id. If West Haven Defendants are suggesting that the Sixth Count fails because it does not expressly invoke the Fourth Amendment, their own argument shows that the Complaint provides adequate notice that the Sixth Count is governed by the Fourth Amendment. If, on the other hand, West Haven Defendants are suggesting that the Sixth Count is intended to state an additional, separate claim under the Fourteenth Amendment, the court does not find support for this reading of the Complaint. The reference to the Fourteenth Amendment presumably reflects case law holding that the Fourth Amendment applies to state police by virtue of the Fourteenth Amendment's Due Process Clause. E.g., Mapp v. Ohio, 367 U.S. 643 (1961).

inquiry in an excessive force case is an objective one:  the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  <u>Graham</u>, 490 U.S. at 397.

An officer may be held liable not only for using excessive force, but also for failing to intervene to prevent such a constitutional violation where he has an opportunity to do so.  "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.  An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . that excessive force is being used. . . . In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring."  <u>Anderson v. Branen</u>, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted).

There is no question that Villano's deposition testimony is sufficient to allow a jury to conclude that the force used against Villano during the course of his arrest was objectively unreasonable.  Villano testified that he was lying face down on the ground, in full compliance with police demands, when one officer held him down and another repeatedly slammed his head against the paved ground, causing a significant cut to his head and lasting damage to his eye.  Villano testified that the officers shouted insults at him during the incident, pretended that Villano was resisting in order to provide cover for their excessive use of force, and indicated that they would have beaten him worse if they were not in a public space in daylight.

Although the police report—adopting the passive voice—indicates that, "Villano was taken to the ground in a brief struggle and sustained a laceration to his head," Def. Ex. A at 5, West Haven Defendants do not contend that they can establish, as a matter of law, that the use of force was reasonable under the circumstances. Instead, West Haven Defendants focus their arguments on whether or not there is sufficient evidence to hold two of the individual West Haven officers–Officers Casman and Fazzino— personally liable for this excessive force and whether or not they are entitled to qualified immunity. Their arguments focus on the fact that both officers have denied that they were involved in taking Villano into custody, see Fazzino Aff. ¶ 10; Casman Aff. ¶ 14, and that Villano was not able to see which officers participated directly in the excessive use of force against him.

The court finds that there are material issues of fact requiring a trial with respect to the liability of Officers Fazzino and Casman. Crediting Villano's testimony and viewing the evidence in his favor, there is sufficient evidence to support an inference that Officers Casman and Fazzino were at the scene when Villano and Galasso were taken into custody. Officers Casman and Fazzino were traveling together with a third police officer in the Whitney Avenue area just prior to the arrest. Casman Aff. ¶ 14; Fazzino Aff. ¶ 8. Villano's testimony indicates that he saw three officers running towards him from the direction of Whitney Avenue just before he was taken into custody. Villano Depo. at 99. Villano testified that one of these three officers had a bandaged arm, id. at 99-100, that he recognized that officer, id. at 83, and that the officer identified him as the driver of the car from the earlier incident, id. at 90. Officer Casman had a bandaged arm due to that earlier encounter with Villano's rear

9

passenger window. Casman Aff. ¶¶ 10, 11. Therefore, a reasonable jury could infer that Officer Casman, Officer Fazzino, and the other officer with them in the Whitney Avenue area were the three officers who ran from the direction of Whitney Avenue to apprehend Villano and Galasso. Moreover, defendants concede that Officer Casman arrived in time to take Galasso into custody. Thus, even if there were other officers arriving at approximately the same time, as Villano concedes, a jury could infer that the three officers seen running towards Villano were among the first officers on the scene and that they were there when Villano and Galasso were taken into custody.

Officer Casman nowhere denies that he was one of the first officers to reach Villano and Galasso. However, Officer Fazzino affirmatively states that he arrived at the scene only after Villano had been taken into custody. Fazzino Aff. ¶¶ 9, 10. Therefore, a conclusion that Casman and Fazzino were among the first officers on the scene would contradict that claim. However, a jury would not be required to credit Officer Fazzino's exculpatory claim. Here, Villano's testimony, which is credited for purposes of this Ruling, and the statements in the Officers' Affidavits are sufficient to create a genuine issue of fact as to whether or not Officers Casman and Fazzino were among the first officers at the scene.[3]

---

[3] There is another conflict in the evidence that, if resolved in Villano's favor, could lead a jury to doubt the exculpatory claims made in the officers' Affidavits. Villano testified that, during the initial encounter with the police he was driving forward when the side window of the car was shattered and that he feared someone was trying to break into the car. Officer Casman's description of the event is quite different. He claims that Villano maneuvered the car in a way that caused his arm to go through the car window. Similarly, the police report, submitted on behalf of both officers, indicates that the car was in reverse when the side window somehow struck Officer Casman's arm. The court makes no assumption about which version is more accurate. However, on the record before the court, it appears inexplicable that the side window could shatter by Villano merely driving the car such that Officer Casman's arm came into contact with it, without Officer Casman actively striking the window. It would be up to a jury to resolve the conflicting accounts, and if they believed Villano, that could lead them to doubt the exculpatory claims in the officers' Affidavits and in the police report.

Defendants also argue that Officer Fazzino could not have been one of the three officers because Officer Fazzino claims that he did not have a bandaged arm or a shaved or bald head and because Villano testified that he thought Detective Sacco was the third officer. However, Villano testified that he was not sure that Detective Sacco was one of those three officers and that he could only be certain that Detective Sacco was at the scene of the arrest. Villano Depo. at 40-41, 47, 51. Thus, even if a jury credited Officer Fazzino's claim that he did not have a shaved or bald head at the time, the jury could still conclude that Officer Fazzino was the third officer who Villano thought might have been Sacco.

If the jury did conclude that Officer Casman and Officer Fazzino were at the scene when Villano and Galasso were apprehended, the jury could also reasonably conclude that either or both of them is personally liable for failing to intercede and stop the use of excessive force. On West Haven Defendants' theory, Officer Casman could not have been one of the two officers who held and assaulted Villano because Villano testified that, when he was turned over after the incident, the officer with the bandaged arm was "over by Galasso." Villano Depo. at 100. The court notes that a jury need not accept this argument. Villano's testimony does not make clear how much time had passed when he saw Officer Casman with Galasso, nor how far away they were. Thus, the testimony leaves open the possibility that Officer Casman played a direct role in taking Villano into custody and then walked a very short distance over to Galasso before Villano was turned over. However, assuming for the sake of argument that a jury found that Officer Casman went directly to Galasso and never touched Villano, this would not preclude a finding that he is liable for failing to intervene.

Even if Officer Casman or Officer Fazzino was not involved directly in taking Villano into custody, as officers at the scene of the arrest, each would have had a duty to intercede and to prevent the use of excessive force. Defendants argue that there was no opportunity to intercede because Villano testified that the incident "happened so quick." Villano Depo. at 44; <u>accord</u> Villano Depo. at 95-96. "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." <u>See</u> <u>Anderson</u>, 17 F.3d at 557. The court is not persuaded that Villano's non-specific testimony that the incident happened quickly is sufficient to rule out the possibility that the officers at the scene at the time of the arrest had time to intercede. The police report indicates that there was a "brief struggle" and Villano testified that his head was slammed against the ground six or more times. Under either description, it is possible that the officers in the vicinity would have had time to protest verbally, if not physically stop the excessive use of force.

Moreover, even if the use of force itself happened quickly, there is evidence that would support a jury in concluding that the excessive use of force was foreseeable and that the duty to intervene and prevent the use of excessive force arose at least shortly before Villano was taken into custody. A jury could reasonably conclude that the one or more of the officers intended to exact revenge on Villano before the officers had him in custody. Villano testified that, as the three officers approached, one or more of them asked, "Which one was the driver?" and that Officer Casman responded by pointing out Villano. Villano Depo. at 43, 89-90. West Haven Defendants claim that doing so was "necessary in order to effectuate Plaintiff's arrest." Def. Mem. at 13. However, they

12

offer no explanation why that would be so. The police report makes clear that the police had been looking for both Villano and Galasso and that they arrested both of them. Def. Ex. A. Furthermore, Villano testified that, while his head was being slammed on the ground, the officers cursed him and told him he was lucky it was not dark, and that one of them "said something referring to the other cop getting hurt." Villano Dep. at 43. Thus, a jury could reasonably infer that the officers' interest in identifying the driver was to exact revenge for disobeying Officer Casman and leaving him injured during the earlier incident. Any officer who knew or had reason to know that his fellow officers intended to exact revenge would thereby have had reason to know that there was a substantial risk that the officer was about to use unreasonable and excessive force.

Finally, Officers Fazzino and Casman have not shown that they are entitled to qualified immunity as a matter of law. Because the duty not to use excessive force and the duty to intervene are both clearly established, any claim of qualified immunity on behalf of Officers Fazzino and Casman depends on whether or not it was clear that the officers' conduct was objectively reasonable in the circumstances. This is a mixed question of law and fact. Zellner v. Summerlin, 494 F.3d 344, 367 (2d Cir. 2007). Whether or not the officers are entitled to qualified immunity depends on the disputed issues of fact. For example, if the jury credits testimony that Villano resisted or struggled, the jury may conclude that the head injury resulted from a reasonable use of force in response, not from an unnecessary, retaliatory attack. Similarly, after hearing testimony, a jury may make findings of fact on how quickly these events unfolded. Such findings could either support or rule out an argument that the officers' conduct was objectively reasonable for purposes of qualified immunity. All such issues of fact must

be resolved by the jury before the court may rule on the issue of qualified immunity.  <u>Id.</u> at 368.

In sum, multiple issues of material fact preclude summary judgment on the claim of excessive force against Officers Fazzino and Casman.  Whether or not the injuries were caused in the manner described by Villano, and what role, if any, Officers Fazzino and Casman played in causing those injuries are questions for a jury.  Therefore, West Haven Defendants Motion for Summary Judgment on Count Six is denied with respect to Officers Fazzino and Casman.

### B.    Count One:  Negligence Against Officers Casman and Fazzino

Each of the state law claims arise out of the same facts as Count Six, and involves the conduct of the same defendants.  Therefore, the court exercises supplemental jurisdiction over these claims.

In Count One, Villano asserts a claim for negligence under Connecticut law against the individual officers.  West Haven Defendants argue that the individual officers are entitled to immunity under a common-law qualified immunity doctrine.[4]

> Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature.  In contrast, [m]inisterial refers to a duty which is

---

[4] West Haven Defendants also argue that 52 Conn. Gen. Stat. § 52-557n(a)(2) precludes a negligence claim against the individual defendants.  However, section 52-557n(a) addresses only the liability of a political subdivision of the state for the actions of its employees, not the liability of the individual officers themselves.  52 Conn. Gen. Stat. § 52-557n(a)(2) ("a political subdivision of a state shall not be liable . . ."); <u>cf.</u> <u>Spears v. Garcia</u>, 263 Conn. 22, 35-37 (2003) (distinguishing the liability of municipalities, as permitted by section 52-557n(a), from the liability of municipal employees, as permitted under the qualified immunity doctrine).

> performed in a prescribed manner without the exercise of
> judgment or discretion.

Spears v. Garcia, 263 Conn. 22, 36 (2003) (citations omitted).  West Haven Defendants

claim that carrying out an arrest is not a ministerial act, but a discretionary government

function, and this court has so held.  See Galindez v. Miller, 285 F. Supp. 2d 190, 195

(D. Conn. 2003).

However, under Connecticut law, "[a] municipal employee's immunity for the

performance of discretionary governmental acts is . . . qualified by three recognized

exceptions."  Spears, 263 Conn. at 36.  One of these exceptions applies "where the

alleged acts involve malice, wantonness or intent to injure, rather than negligence," and

another applies "where the circumstances make it apparent to the public officer that his

or her failure to act would be likely to subject an identifiable person to imminent harm."

Id.

Applying the latter exception, the Connecticut Supreme Court has held that a

plaintiff may bring a negligence claim against a police officer where, owing to the

circumstances, the police officer comes to have a specific duty to prevent imminent

harm, as opposed to the officer's general duty to the public.  In Sestito v. City of Groton,

178 Conn. 520, 423 A.2d 165, 171 (1979), the Court set aside a directed verdict for the

defendant police officer, where the evidence indicated that the officer observed a melee

among a small group of men, but failed to intervene until after the decedent had been

shot.  The Court explained that, "as a matter of common law negligence, it is

conceivable that [Officer] Fontaine had a duty to the decedent to act as a skilled

policeman under the circumstances, and breached this duty," and the Court held that

the claim for negligence against the officer should have been submitted to the jury. Id. In contrast, the Connecticut Supreme Court has held that there was no claim for negligence where a police officer failed to detain a drunk driver and that drunk driver later went on to kill a the plaintiff's decedent later in the evening. Shore v. Town of Stonington, 187 Conn. 147, 444 A.2d 1379, 1383 (1982). At the time, the officer had no specific duty to the decedent, only his general duty to the public. Id. Both cases confirm that, under Connecticut law, a specific duty may arise, and a claim for negligence will survive the common law immunity defense, where a police officer is aware of an imminent danger to an identifiable person and where the officer breaches that duty by failing to intervene and "act as a skilled policeman." Sestito, 423 A.2d at 171; see also Shore, 444 A.2d at 1383.

A jury could conclude that Officers Fazzino and Casman had a specific duty to Villano, and that they breached this duty. As explained above, a jury could conclude that the Officers Fazzino and Casman were among the three officers who were at the scene when Villano was taken into custody. Once it became apparent that Villano was being subjected to unreasonable force, any officer at the scene would have had a duty to intervene to prevent that harm. If the jury finds that some of the officers were seeking to identify Villano as they approached in order to exact revenge for Officer Casman's injury, the jury could find that the officer's specific duty arose even before the Villano was apprehended. A jury could conclude that Officers Fazzino and Casman should have instructed the officers not to hurt Villano or should have moved directly to intervene in his arrest. Any officer found negligent for failing to take these measures would not be entitled to immunity under Connecticut law, as he would have known that

16

his failure to intervene was likely to cause imminent harm to an identifiable person, namely, Villano.

Therefore, there is a material issue of fact as to whether Officers Casman and Fazzino are liable for negligence, and they have not shown that they are entitled to this form of qualified immunity as a matter of law. Whether they are entitled to immunity depends upon disputed issues of fact. Therefore, West Haven Defendants' Motion for Summary Judgment on Count One is denied with respect to Officers Fazzino and Casman.

### C. Count Two: Assault and Battery Against Casman and Fazzino

Count Two alleges intentional assault and battery against the individual officers. West Haven Defendants argue that Officers Casman and Fazzino are entitled to summary judgment on this claim because there is no evidence that Officers Casman and Fazzino touched Villano or participated directly in the use of force against him. At oral argument, Villano conceded that he lacked evidence to show that either Officer Casman or Officer Fazzino battered him. Villano conceded that he was proceeding on the theory that the two officers were at the scene and had a duty to intervene. Accordingly, the court finds that there is not a basis in the record from which the jury could conclude that Officer Casman or Officer Fazzino assaulted or battered Villano. Defendants' Motion for Summary Judgment is granted with respect to this claim, with respect to Officers Casman and Fazzino.

### D. Counts One, Two, and Six Against Officer Sires

Counts One, Two, and Six are pled not only against Officers Casman and Fazzino, but also against West Haven Police Officer Paul Sires. Although West Haven

17

Defendants conclude their Memorandum by requesting summary judgment in favor of Officer Sires, Def. Mem. at 25, they make no argument on these counts with respect to Officer Sires.  See Def. Mem. at 11-17 (arguing Count Four only with respect to Officers Casman and Fazzino); id. at 17-20 (arguing Counts One and Two only with respect to Officers Casman and Fazzino); see also Def. Reply at 1-8.  At oral argument, West Haven Defendants conceded that they had not made any particular argument about the liability of Officer Sires.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the Affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  West Haven Defendants have not carried this burden.  The police report lists Officer Sires as an "assisting officer" in the incident.  Def. Ex. A at 2.  West Haven Defendants have not presented any evidence as to the specific role played by Officer Sires and have not argued that there is an absence of evidence with respect to Officer Sires.  Therefore, the Motion for Summary Judgment on each of the Counts One, Two, and Six is also denied with respect Officer Sires.

### E.    Count Four:  Negligence Claim Against the City of West Haven

In Count Four, Villano alleges that the City of West Haven is liable for the negligence of the individual West Haven officers pursuant to Conn. Gen. Stat. § 52-557n(a)(1)(A).  Section 52-557n(a)(1) provides that "a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or

omissions of such political subdivision or any employee, officer or agent thereof acting

within the scope of his employment or official duties."   This provision "permits tort

claimants to bring direct negligence actions against municipalities . . . ."  Grady v. Town

of Somers, 294 Conn. 324, 343 (2009).

As the City of West Haven emphasizes, the liability of a municipality is limited by

section 52-557n(a)(2), which states, "a political subdivision of the state shall not be

liable for damages to person or property caused by: . . . (B) negligent acts or omissions

which require the exercise of judgment or discretion as an official function of the

authority expressly or impliedly granted by law."  The contours of Section 52-557n(a)

are, in this regard, analogous to the common law immunity doctrine discussed in

connection with Count One.  See Grady, 294 Conn. at 348 (noting a "close relationship

between § 52-557n(a) and the common-law doctrines governing municipal employees'

immunity" and "the legislature's intent when it enacted § 52-557n, to create a

harmonious body of law governing municipal liability").  Like municipal employees

protected by that common law immunity doctrine, municipalities may be held liable for

negligent misperformance of a ministerial act, but they are generally protected from

claims of negligence in the performance of a governmental function that requires the

exercise of judgment and discretion.  Thus, West Haven Defendants once again argue

that they are entitled to summary judgment because carrying out an arrest is an official

function requiring the exercise of judgment and discretion.

However, the Connecticut Supreme Court has recently held "that the identifiable

person, imminent harm common-law exception to municipal employees' qualified

immunity also applies in an action brought directly against municipalities pursuant to

§ 52-557n(a)(1)(A)."  Grady, 294 Conn. at 348; accord Colon v. City of New Haven, 60

Conn. App. 168, 184, cert. denied, 255 Conn. 908 (2000).  Thus, just as there are

triable issues of fact as to whether the individual West Haven officers were negligent in

conditions meeting the "identifiable person, imminent harm" exception to immunity,

supra at 14-17, there are also triable issues of fact on the claim against the City of West

Haven pursuant to section 52-557n(a)(1)(A).  Therefore, West Haven's Motion for

Summary Judgment with respect to Count Four is denied.[5]

### F.    Intentional Infliction of Emotional Distress

West Haven Defendants also argue for summary judgment on a supposed claim

of intentional infliction of emotional distress.  The Complaint does not contain a discrete

count styled as a claim for intentional infliction of emotional distress.  However, amidst

the allegations of Count Six, the Complaint does contain an allegation that "the

Defendant Officers subjected the Plaintiff to intentional infliction of emotional distress, in

violation of the laws of the State of Connecticut."  Complaint ¶ 22.

At oral argument, Villano indicated that he is pleading emotional distress, not as

an independent claim, but as an element of damages that may be recovered under his

substantive claims.  Defendants conceded that Villano may seek such damages in

connection with his other claims.  The court, therefore, does not construe the Complaint

as stating an independent claim for intentional infliction of emotional distress.  With the

Complaint so construed, there is no basis for summary judgment on a claim of

---

[5] West Haven Defendants also argue that the City of West Haven may not be held liable in a claim pursuant to 42 U.S.C. § 1983.  The court does not address this argument because the section 1983 claim in Count Six is brought solely against the individual defendants.  The sole claim against the City of West Haven is Count Four, which is not a claim pursuant to section 1983.

intentional infliction of emotional distress.

**V.     CONCLUSION**

For the foregoing reasons, West Haven Defendants' Motion for Summary

Judgment (Doc. No. 40) is **GRANTED IN PART** and **DENIED IN PART**.  The Motion is

granted with respect to Count Two, Villano's claim for intentional assault and battery,

against Officers Casman and Fazzino.  The Motion is denied with respect to Count Two

against Officer Sires and with respect to the other counts against the West Haven

Defendants, i.e., Counts One, Four, and Six.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 26th day of April, 2011.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge